IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. _____

STEVEN K. FARMER,
on behalf of himself and all others
similarly situated,

    Plaintiff,

v.

HUMANA INC.,
a Delaware corporation, and
COTIVITI, INC.,
a Delaware corporation,

    Defendants.
_____/

**DEFENDANTS' JOINT
NOTICE OF REMOVAL**

COMES NOW Defendants Humana Inc. ("Humana") and Cotiviti, Inc. ("Cotiviti") (collectively, "Defendants") and file this Joint Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and in support thereof respectfully show the Court as follows:

**I.    PROCEDURAL BACKGROUND**

1. Plaintiff Steven K. Farmer ("Plaintiff") filed his Class Action Complaint (the "Complaint") against Defendants on May 6, 2021 in the Circuit Court for the Twelfth Judicial Circuit, in and for Sarasota County, Florida, Case No. 2021-CA-002175 (the "State Court Action"). Plaintiff asserts the State Court Action

on behalf of himself and two putative classes comprised of allegedly similarly situated individuals residing in the United States and Florida.[1]

2. Humana and Cotiviti was each served with Plaintiff's Summons and Complaint on May 19, 2021. A copy of the Complaint is attached hereto as **Exhibit A**. This Notice of Removal is being filed within the thirty (30) day time period required by 28 U.S.C. § 1446(b).

3. Plaintiff alleges that on or around March 1, 2021, he received a Notice of Privacy Incident from Humana, informing him that on December 22, 2020 Humana was informed that an employee of Visionary, a subcontractor hired by Humana's vendor, Cotiviti, improperly used access to Plaintiff's and the putative class members' personal identifiable information ("PII") and protected health information ("PHI") in furtherance of a personal coding business endeavor (the "Data Incident"). (Compl. ¶ 25).

4. Plaintiff alleges that as a result of the Data Incident, his and the putative class members' PII and PHI were disclosed to unknown third parties. (*Id.*). The PII and PHI that were improperly disclosed allegedly may have included social security numbers, names, birthdates, addresses, phone numbers, email addresses, member identification numbers, subscriber identification numbers, dates of service, dates of death, provider names, medical record numbers, treatment-related information, and

---

[1] Defendants rely upon Plaintiff's allegations regarding the putative classes solely for purposes of establishing this Court's jurisdiction over the action under the Class Action Fairness Act ("CAFA"). Defendants deny Plaintiff's allegations, that the putative classes are properly defined, and that this action is proper for class treatment under the Federal Rules of Civil Procedure and governing authority.

actual images (x-rays, photographs, etc.).  (*Id.*).

5.      According to the Complaint, "[t]he fraudulent activity resulting from the Data [Incident] may not come to light for years," and that he and the putative class members must therefore "face a lifetime risk of identity theft."  (*Id.* ¶¶ 7, 47).  Therefore, Plaintiff and the putative class members must surveil and monitor their financial and personal records for many years. (*Id.* ¶ 50).

6.      Plaintiff alleges that he and the putative class members suffered injuries as a result of the Data Incident, including: "(i) lost or diminished value of PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data [Incident], including, but not limited to lost time, and (iv) the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII and PHI." (*Id.* ¶ 11).

7.      Based on these allegations, Plaintiff seeks to bring a variety of claims on behalf of a nationwide class and a Florida class comprised of approximately 62,000 individuals whose PII and PHI was allegedly compromised in the Data Incident. (*Id.* ¶¶ 3, 65-67).  Plaintiff asserts causes of action for negligence, breach of implied

contract, invasion of privacy, and breach of confidence on behalf of himself and the Nationwide Class, and for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. ("FDUTPA") on behalf of himself and the Florida Class.  Plaintiff seeks damages, including actual, nominal, and consequential, attorneys' fees, and equitable and injunctive relief.  (*Id.* Prayer for Relief, ¶¶ B, C, D, and E).

8. As to injunctive relief, Plaintiff seeks an order:  (1) prohibiting Defendants from engaging in the wrongful and unlawful acts alleged in the Complaint; (2) requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards and federal, state or local laws; (3) requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and putative class members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and putative class members; (4) requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and putative class members; (5) requiring Defendants to ensure that appropriate safeguards are in place when sharing PII or PHI with other entities, including vendors and subcontractors; (6) requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures; (7)

requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting, the personal identifying information of Plaintiff and putative class members; (8) requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (9) requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendants' policies, programs, and systems for protecting personal identifying information; and (10) requiring Defendants to meaningfully educate all putative class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.  (*Id.* Prayer for Relief, ¶ C).

## II. GROUNDS FOR REMOVAL

9. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**A.     This Court Has Original Jurisdiction Under CAFA.**

10.     CAFA provides this Court with original jurisdiction over this class action. "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 924-25 (11th Cir. 2019) (quoting *Dark Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). Unlike traditional diversity jurisdiction, there is no presumption against removal under CAFA. *Id*; *see also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (holding that "[a]pplying this binding precedent from the Supreme Court [in *Dart Cherokee*], we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions"). In deciding whether removal is proper, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson,* 943 F.3d at 924-25.

11.     Under CAFA, any putative class action commenced on or after February 18, 2005 may be removed when: (i) the suit involves a class action filed under Federal Rule 23 or a similar state statute or rule; (ii) there are at least 100 putative class members; (iii) any member of the putative class is a citizen of a state different from any defendant; and (iv) the amount in controversy in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(1)(B), 1332(d)(2), 1332(d)(5), 1453(b).

12.     Here, the requirements for removal under CAFA are satisfied.

*This Case Involves a Class Action.*

13. CAFA defines a "class action" as: "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

14. Plaintiff seeks to represent two putative classes pursuant to Fla. R. Civ. P. 1.220, the State of Florida's analog to Federal Rule of Civil Procedure 23. (*See* Compl. ¶¶ 63-79). Thus, the first requirement is satisfied.

*There Are More Than 100 Putative Class Members.*

15. Plaintiff seeks to represent two putative classes comprised of individuals residing in the United States and Florida "whose PII was compromised in the [Data Incident] that is the subject of the Notice of Privacy Incident that Humana sent to Plaintiff on or around March 1, 2021[.]" (Compl. ¶¶ 64-65). Plaintiff alleges that approximately 62,000 individuals' PII was compromised in the Data Incident alleged in the Complaint. (*See id.* ¶¶ 3, 30, 68). This allegation satisfies the putative class size requirement of CAFA. 28 U.S.C. § 1332(d)(5).

*Minimal Diversity Exists.*

16. Diversity of citizenship exists under § 1332(d). Under CAFA, diversity of citizenship is established where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

17. For purposes of 28 U.S.C. § 1332(d), a corporation is deemed to be a

citizen of any State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

18. As set forth in the Complaint, Plaintiff is a citizen of Florida residing in Sarasota County, Florida. (Compl. ¶ 13).

19. The Complaint alleges that Humana "is a corporation organized under the laws of Delaware, headquartered at 500 West Main Street, Louisville, Kentucky, with its principal place of business in Louisville, Kentucky." (*Id.* ¶ 14).

20. Likewise, the Complaint alleges that Cotiviti "is a corporation organized under the laws of Delaware, headquartered at 10701 S River Front Pkwy, Unit 200, South Jordan, Utah, with its principal place of business in South Jordan, Utah." (*Id.* ¶ 15).

21. Because Plaintiff's citizenship differs from both Humana's and Cotiviti's, diversity of citizenship exists under CAFA. *See* 28 U.S.C. § 1332(d)(2).

### *The Amount-in-Controversy Requirement is Satisfied.*

22. CAFA requires that a complaint put in controversy more than $5,000,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6).

23. A defendant seeking to remove a case to federal court under CAFA need only include in the notice of removal "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Anderson*, 943 F.3d at 925

(emphasis added). Where a plaintiff does not plead a specific amount of damages, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). In determining whether the amount-in-controversy requirement is satisfied, the Court may consider various pieces of evidence, including "facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence." *Id.* at 754.

24. "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka,* 608 F.3d at 751. Indeed, as the Eleventh Circuit has recognized, "'the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.'" *Id.* (citation omitted).

25. Although the Complaint here does not specify the amount of damages Plaintiff and the putative class members seek in this action, the allegations in the Complaint make clear that the putative class members' claims, in the aggregate, exceed the sum or value of $5,000,000, exclusive of interest and costs. According to the Complaint, there were approximately 62,000 Humana members who were affected by the Data Incident. (*Id.* ¶ 3). If Plaintiff alleges more than $80.65 in damages for each putative class member, the jurisdictional amount is satisfied. And

the allegations in the Complaint plainly do.

26. Plaintiff alleges that as a result of the Data Incident, he and approximately 62,000 putative class members face a lifetime risk of identity theft. (*See* Compl. ¶¶ 7, 9, 30).[2] Plaintiff alleges that "Defendants have offered Plaintiff and Class Members *only* two years of identity theft protection through a single credit bureau, Equifax." (*Id.* ¶ 52) (emphasis added). Plaintiff contends that the offered protection "is inadequate to protect Plaintiff and Class members from the threats they face for years to come, particularly in light of the PII and PHI at issue here." (*Id.*). The Complaint alleges that Plaintiff and the putative class members suffered multiple injuries, including "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI." (*Id.* ¶ 13). And, Plaintiff further alleges that he and putative class members "now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights." (*Id.* ¶ 50).

27. These damages therefore plausibly aggregate to exceed CAFA's $5,000,000 threshold. For example, the cost of providing credit-monitoring services through Equifax or Experian ranges from $9.95 to $19.95 per month. *See* **Exhibits 1 and 2** to Declaration of Kimberly J. Donovan ("Donovan Decl."), attached as **Exhibit B**. Multiplying just the cost of purchasing even one additional year of credit-

---

[2] *See also* Compl. ¶ 39 ("Once PII and PHI is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years"); ¶ 50 ("Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI").

monitoring services at $9.95 by the number of putative class members easily puts more than $5,000,000.00 in controversy.[3]

28.    Indeed, in data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements.  *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 U.S. Dist. LEXIS 63573, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).  Thus, the Complaint's request for damages alone puts more than $5 million in controversy in this case.

29.    Moreover, Plaintiff's Complaint alleges that the PII at issue in the Data Incident is highly valuable to criminals (Compl. ¶¶ 40-45) and seeks a variety of injunctive relief, which ostensibly would enable Plaintiff and the putative class

---

[3] $9.95 x 12 months x 62,000 putative class members = $7,402,800.

members to protect their PII and PHI from theft.[4]  The value of the requested injunctive relief is also properly included in the amount-in-controversy calculation. *Anderson*, 943 F.3d at 925; *see also Kelly v. State Farm Mut. Auto. Ins. Co.*, No. 5:10-cv-194-Oc-32GRJ, 2010 U.S. Dist. LEXIS 145840, at *10 (M.D. Fla. Sep. 23, 2010).

30. Finally, Plaintiff's Complaint seeks attorneys' fees. (Compl., Prayer for Relief ¶ E). FDUTPA authorizes the recovery of attorneys' fees to the prevailing party. *See* Fla. Stat. § 501.2105. "'When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.'" *Mirras v. Time Ins. Co.*, 578 F. Supp. 2d 1351, 153 (M.D. Fla. 2008) (citing *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1265 (11th Cir. 2000)). These attorneys' fees, coupled with the stated damages and relief discussed above, plausibly aggregate to more than $5,000,000.00.

31. Accordingly, it is clear from the face of the Complaint that CAFA's $5,000,000.00 amount-in-controversy threshold is exceeded here.

32. An overlapping putative class action arising out of the same Data Incident and brought on behalf of the same putative class was recently filed in the United States District Court for the Western District of Kentucky, and the Complaint asserts federal court jurisdiction under CAFA, alleging that "[t]he matter in

---

[4] *See, e.g.,* Compl., Prayer for Relief ¶ C. (seeking an order "requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and Class Members," and "requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.").

controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs." *Segars v. Humana Inc.,* Case No. 3:21-cv-00342-RGJ (W.D. Ky.), Compl. ¶ 6 (Dkt. # 1).

**B.  The CAFA Exceptions Do Not Apply.**

33. The mandatory and discretionary exceptions to removal under 28 U.S.C. § 1332(d) do not apply in this case.

*The "Local Controversy" Exception Does Not Apply.*

34. CAFA's "local controversy" exception to a district court's exercise of jurisdiction exists only if, among other factors: "at least 1 defendant is a defendant— (aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (cc) who is a citizen of the State in which the action was originally filed…" 28 U.S.C. § 1332(d)(4)(A)(i)(II).

35. As noted above, neither of the Defendants is a citizen of Florida, "the State in which [this] action was originally filed." Thus, the "local controversy" exception does not apply.

*The "Home State Controversy" Exception Does Not Apply.*

36. Similarly, CAFA's "home state controversy" exception requires a district court to decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

Because neither of the Defendants is a citizen of Florida, this exception does not apply.

### *The Discretionary Exception Does Not Apply.*

37. Under CAFA's discretionary exception, a district court *may* decline to exercise jurisdiction over a class action "in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed," taking into account six factors. 28 U.S.C. § 1332(d)(3). Because neither of the Defendants is a citizen of Florida, this exception does not apply.

### III.  COMPLIANCE WITH PROCEDURAL REQUIREMENTS

38. Defendants satisfy the procedural requirements for removal set forth in 28 U.S.C. § 1446.

**A.  Removal Is Timely.**

39. Defendants are entitled to remove this action within thirty days of receipt of service of the Complaint. *See* 28 U.S.C. § 1446(b)(1). The State Court Action was filed on May 6, 2021, and Defendants were served on May 19, 2021. Accordingly, this Joint Notice of Removal is timely.

**B.  Removal Is To The Proper Court.**

40. This Court is located in the "district and division" within which the State Court Action is pending in the Circuit Court for the Twelfth Judicial Circuit, in and for Sarasota County, Florida, and is therefore the proper court. *See* 28 U.S.C. §

1446(a).

C.  **Pleadings And Process Attached.**

41. In compliance with 28 U.S.C. § 1446(a) and Local Rule 1.06(b), copies of all process, pleadings, orders, and other papers or exhibits of every kind on file in the State Court Action are attached hereto as **Exhibit C.**

D.  **Notice.**

42. Promptly after the filing of this Joint Notice of Removal, Defendants shall give written notice of the removal to all parties and will file a copy of this Notice of Removal with the Circuit Court for the Twelfth Judicial Circuit, in and for Sarasota County, Florida.

WHEREFORE, Defendants respectfully pray that the action be removed to this Court and that this Court assume full jurisdiction as if it had been originally filed here.

| | |
|---|---|
| DATED:  June 17, 2021 | Respectfully submitted, |
| BAKER HOSTETLER | SQUIRE PATTON BOGGS (US) LLP |
| /s/ *Julie Singer Brady* | /s/ *Jason Daniel Joffe* |
| Julie Singer Brady, Esq. | Jason Daniel Joffe (FBN 0013564) |
| Florida Bar No. 389315 | Kimberly J. Donovan (FBN 0016496) |
| 200 South Orange Avenue, Suite 2300 | 200 S. Biscayne Blvd., Suite 4700 |
| Orlando, FL 32801-3432 | Miami, FL 33131 |
| Telephone:  407.649.4000 | Telephone: (305) 577-7000 |
| Facsimile:   407.841.0168 | Facsimile:  (305) 577-7001 |
| Email:  jsingerbrady@bakerlaw.com | Email: jason.joffe@squirepb.com |
| *Counsel for Defendant Cotiviti, Inc.* | Email: kimberly.donovan@squirepb.com |
| | *Counsel for Defendant Humana Inc.* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 17, 2021, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Jason Daniel Joffe*
Jason Daniel Joffe