## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| STEVEN K. FARMER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUMANA INC., a Delaware corporation, and COTIVITI, INC., a Delaware corporation,<br><br>Defendants. | Case No.: 8:21-cv-01478-MSS-SPF |

## PLAINTIFF'S UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Steven K. Farmer ("Plaintiff") respectfully moves for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I.  INTRODUCTION

Defendant Cotiviti, Inc. ("Cotiviti") helps Defendant Humana, Inc. ("Humana") request medical records needed to verify data reported to the Centers for Medicare and Medicaid Services.  S.A. ¶ I.1.  Cotiviti in turn uses a subcontractor, Visionary RCM Infotech (India) Pvt Ltd ("Visionary"), to review the collected medical records.  *Id.*

On or about March 1, 2021, Humana disclosed that between October 12, 2020 and December 16, 2020, an employee of Visionary gained access to personally

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement ("S.A."), which is attached hereto as **Exhibit A**.

identifiable information ("PII") and protected health information ("PHI") of Humana members and shared that information with others in connection with a personal coding business (the "Data Incident"). *Id.* ¶¶ I.2-3.

On May 6, 2021, Plaintiff commenced the instant litigation by filing a complaint in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, relating to the Data Incident. *Id.* ¶ I.3. The complaint sought class action status and remedies for Plaintiff and other Humana members impacted by the Data Incident. *Id.* ¶¶ I.3-4. On or about June 17, 2021, Defendants removed the matter to this Court. *Id.*

Thereafter, the parties engaged in motion practice, including Defendants' Motions to Dismiss (Docs. 15, 16). On January 25, 2022, the Court entered an Order granting in part and denying in part the Motions to Dismiss (Doc. 32).

On March 10, 2022, the parties engaged in mediation with mediator Harry Schafer, an experienced mediator. In advance of the mediation, the parties submitted mediation briefs advancing their respective positions on the merits of the claims and class certification. After extensive arm's length settlement negotiations, the parties were able to reach an agreement, which, if approved by the Court, would resolve the claims of Plaintiff and the other Humana members impacted by the Data Incident.

Pursuant to the terms that were negotiated between them, the parties now wish to fully and finally resolve their dispute on a class-wide basis. Those terms are memorialized in the Settlement Agreement, which provides for the resolution of all claims asserted, or that could have been asserted, against Defendants relating to the Data Incident, by and on behalf of Plaintiff and Settlement Class Members.

The relief negotiated by counsel extremely experienced in litigating privacy litigation and security incidents of the type at issue in the present litigation, and provided by the Settlement, is designed to address the injuries and repercussions typically experienced by individuals whose personally identifiable information has been compromised in a security incident of the type at issue here.  Specifically, the Settlement Agreement provides an aggregate cap of $500,000.00, to be paid by Cotiviti, for the following general categories of relief; (i) the reimbursement of ordinary expenses, (ii) the reimbursement of other extraordinary expenses, and (iii) credit monitoring and identity protection.  The Settlement Agreement also requires Cotiviti to separately pay for (i) all costs for notice to the Settlement Class as required under S.A. ¶¶ IV.3.1 and IV.3.2; (ii) Costs of Claims Administration under S.A. ¶¶ IV.8.1, IV.8.2, and IV.8.3; and (iii) the costs of Dispute Resolution described in S.A. ¶ IV.2.6. *See* S.A. ¶ IV.2.7. These services will be handled by a neutral experienced in disseminating notice to class members and administrating claims of the type which may be filed by Settlement Class Members.  Cotiviti will also separately pay the attorney's fees, costs, and expenses of Proposed Class Counsel and a service award to Class Representative (if permitted), as set forth in S.A. ¶ IV.7, subject to Court approval.  Proposed Class Counsel has agreed to request, and Cotiviti has agreed to pay, subject to Court approval, the amount of $300,000.00 to Proposed Class Counsel for attorney's fees, costs, and expenses.  S.A. ¶ IV.7.2.  Proposed Class Counsel will move the Court for a service award payment not to exceed $2,500 per Class Representative to be paid if and only if the *en banc* Eleventh Circuit vacates the decision

3

in *Johnson v. MPAS Solutions, LLC*.  S.A. ¶ IV.7.3.  As the Court may be aware, a motion seeking *en banc* review has been pending since the end of 2020.  Proposed Class Counsel will file the motion for attorneys' fees, costs, expenses, and service award at least 21 days before the deadline for objections and opt-outs.

## II. BACKGROUND

### A. Information About the Settlement

To explore and potentially negotiate a class-wide settlement before a neutral, the parties agreed on and retained Harry Schafer, a highly experienced mediator. Declaration of John A. Yanchunis, attached as **Exhibit B** ("Yanchunis Decl."), ¶ 16. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On March 10, 2020, the parties had a full-day mediation session with Mr. Schaffer.  *Id.*  The negotiations were hard-fought throughout, and the process was conducted at arm's length and non-collusive.  *Id.* After extensive arm's length settlement negotiations conducted through Mr. Schaffer, the parties reached an agreement on the essential terms of settlement.  *Id.*  The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties.  *Id.* ¶ 19.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including other data breach cases in this District and before this Court, and the information provided by

Defendants, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

## B. The Terms of the Settlement Agreement

### 1. The Settlement Class

The proposed Settlement Class sought to be certified for purposes of settlement is defined as follows:

> "All individuals residing in the United States whose personal information was or may have been compromised in the data breach that is the subject of the Notice of Privacy Incident that Humana sent to Plaintiff and others in substantially the same form on or around March 1, 2021." The Settlement Class specifically excludes: (i) Humana Inc. and Cotiviti, Inc. and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) the attorneys representing the Parties in the Litigation; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity involved in the Data Incident or who pleads nolo contendere to any such charge.

S.A. ¶ IV.1.26.

### 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of ordinary expenses, not to exceed $250 per Settlement Class Member, including attested-to lost time spent to address the repercussions of the Data Incident at a rate of $20 per hour for up to 3 hours;

- Reimbursement of other extraordinary expenses not covered in the ordinary expense category incurred as a result of the Data Incident, not

to exceed $5,000 per Settlement Class Member; and

- In order to provide protection from the potential consequences of the Data Incident, Settlement Class Members may enroll in two (2) years of IDX Identity Protection Services, regardless of whether the Settlement Class Member submits a claim for reimbursement of ordinary or extraordinary expenses.

S.A. ¶¶ IV.2.1, IV.2.2, IV.2.3.

The Identity Protection Services to be provided by IDX under the Settlement are robust and important. The retail cost of buying the same Identity Protection Services would be $238.80 per person for 2 years of service. *See* Yanchunis Decl. ¶ 27.

### 3. Proposed Notice Program

Pursuant to the Settlement Agreement, the parties propose RG/2 Claims Administration LLC be appointed as Settlement Administrator. RG/2 Claims Administration LLC is a nationally-recognized class action notice and administration firm that has designed a class notice program for this case, which the parties and RG/2 Claims Administration LLC believe is an effective program.

Subject to Court approval, this Notice Program involves direct notice disseminated via mail or email to all Settlement Class Members.  S.A. ¶ IV.3.1.f. The forms of Notice are attached as Exhibits B and C to the Settlement Agreement. A declaration from RG/2 Claims Administration LLC with additional details about the Notice Program is attached hereto as **Exhibit C** ("Wickersham Decl.").

Finally, RG/2 Claims Administration LLC will also establish a settlement website. S.A. ¶ IV.3.2.  In addition to the Notice, the website will include information about the Settlement, related case documents, and the Settlement Agreement.

Settlement Class Members will also be able to submit claims electronically.

Notice of the Settlement will be given to the Settlement Class no later than thirty (30) days from the date of the Court's Preliminary Approval Order. *Id.*[2]

The Notice informs Settlement Class Members of the nature of the Action, the litigation background, the terms of the agreement, the relief provided, Proposed Class Counsel's request for fees, costs, and expenses, and the scope of the release and the binding nature of the Settlement on Class Members. The Notice also describes the procedure for objecting to the Settlement; advises Settlement Class Members that they have the right to opt out and describes the consequences of opting out; and will state the date and time of the final approval hearing (subject to this Court's scheduling), advising that the date may change and how to check the settlement website.

Plaintiff is informed that all costs for notice to the Settlement Class as required under ¶¶ IV.3.1 and IV.3.2, Costs of Claims Administration under ¶¶ IV.8.1, IV.8.2, and IV.8.3, and the costs of Dispute Resolution described in ¶ IV.2.6 are expected to be approximately $80,057.00. Wickersham Decl. ¶ 13.

### 4. Exclusion and Objection Procedures

The proposed Notice advises Settlement Class Members of their rights to object or opt out of the Settlement and directs Settlement Class Members to the settlement website for more information. The Notice provides instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Notice also provides

---

[2] A proposed Preliminary Approval Order is attached hereto as **Exhibit D**.

instructions for Settlement Class Members to object to the Settlement and/or to Plaintiff's Counsel's application for attorneys' fees, costs, and expenses. S.A. ¶¶ IV.5.1, IV.5.2.

### 5. Attorneys' Fees, Costs, and Expenses

Proposed Class Counsel has agreed to request, and Cotiviti has agreed to pay, subject to Court approval, the amount of $300,000 for attorneys' fees, costs, and expenses. S.A. ¶ IV.7.2. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Yanchunis Decl. ¶ 19.

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all claims and causes of action that were or could have been brought in the Litigation based on, relating to, concerning or arising out of the Data Incident and alleged theft or misuse of Humana members' PII or PHI, or the allegations, facts, or circumstances related to the Data Incident as described in the Litigation … by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident and alleged theft or misuse of Humana members' PII or PHI or the allegations, facts, or circumstances related to the Data Incident as described in the Litigation.

S.A. ¶¶ IV.1.21, IV.6.1.

## III.  ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification.

*See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Judges in this district have noted—many times—that "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[3]

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S.

---

[3] *Iverson v. Advanced Disposal Servs., Inc.*, 2021 WL 4943585, at *3 (M.D. Fla. Aug. 6, 2021) (Toomey, M.J.), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021) (Davis, J.); *Flores v. Acorn Stairlifts, Inc.*, 2020 WL 9549903, at *1 (M.D. Fla. Jan. 31, 2020) (same) (Smith, M.J.) *report and recommendation adopted*, Case No. 6:19-cv-00844, ECF No. 49 (M.D. Fla. March 24, 2020) (Berger, J.).

at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

#### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Humana sent notices of the Data Incident to 64,653 Humana members. S.A. ¶ I.2. Thus, numerosity is easily satisfied.

#### b. Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The

commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[4] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff alleged, among others, the following common questions:

a. Whether and to what extent Defendants had a duty to protect the PII and PHI of Plaintiff and Class Members;

b. Whether Defendants had duties not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendants had duties not to use the PII and PHI of Plaintiff and Class Members for non-business purposes;

d. Whether Defendants failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

e. Whether and when Defendants actually learned of the Data Breach;

f. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g. Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the

---

[4] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

information compromised in the Data Breach;

    i.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

    j.  Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members;

    k.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

    l.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

    m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

(Compl. ¶ 69). Such issues, focusing on Defendant's conduct, satisfy commonality.[5]

### c. Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[6] Simply put, when the same course of conduct is directed at both the named

---

[5] *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

[6] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Incident. They are also based on the same legal theory, *i.e.*, that Defendants had legal duties to protect Plaintiff's and Settlement Class Members' PII and PHI. Because there is a "sufficient nexus" between Plaintiff's and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d.  **Adequacy.**

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. He authorized Humana to collect and retain his PII and PHI and alleges it was compromised by the Data Incident, as the PII and PHI of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, Proposed Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Yanchunis Decl., ¶¶ 3–12, and its Composite Exh. 1. Because Plaintiff and his counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

## 2. The Predominance and Superiority Requirements of Are Met.

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

## a. Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[7] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[8]

Common issues readily predominate here because the central liability question in this case—whether Defendants failed to safeguard Plaintiff's PII and PHI, like that of every other Settlement Class Member—can be established through generalized evidence.[9] Several case-dispositive questions could be resolved identically for all

---

[7] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[8] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

[9] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

members of the Settlement Class, such as whether Defendants had duties to exercise reasonable care in safeguarding, securing, and protecting their PII and PHI and whether Defendants breached those duties. The many common questions that arise from Defendants' conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[10] Because the claims are being certified for settlement purposes, there are no manageability issues.[11]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"[12] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members

---

[10] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[11] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[12] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[13] Additionally, the Settlement will give the parties the benefit of finality.

### B. Plaintiff's Counsel Should Be Appointed as Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims

---

[13] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Mr. Yanchunis' Declaration, Proposed Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiff and the Settlement Class. Accordingly, the Court should appoint John A. Yanchunis and Ryan D. Maxey as Class Counsel.

### C. The Settlement Is Fair, Reasonable, and Adequate.

After determining that certification is appropriate, courts next consider whether the proposed settlement warrants preliminary approval. Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[14]

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[15] Thus,

---

[14] *See Taylor v. Citizens Telecom Servs. Co., LLC*, ----F. Supp. 3d ---- 2022 WL 456448, at *2 (M.D. Fla. Feb. 8, 2022) (Honeywell, J.) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[15] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy

while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1. The Settlement Satisfies Amended Rule 23(e)

Rule 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes.  As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

---

favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a.  Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Harry Schafer. Yanchunis Decl. ¶ 16.[16] Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

### b.  Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of his claims, the risks involved in prosecuting a class action through trial cannot be disregarded.  Plaintiff's claims would still need to succeed against the pending motion to dismiss (Doc. 89), and on a motion for class certification, and likely survive an appeal thereof.

Pursuant to the Settlement, Cotiviti will pay an aggregate cap of $500,000.00 for (i) the reimbursement of ordinary expenses, (ii) the reimbursement of other extraordinary expenses, and (iii) credit monitoring and identity protection.  Each Settlement Class Member who submits a timely and valid claim form may receive

---

[16] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

reimbursement of (i) ordinary expenses not to exceed $250 per Settlement Class Member, including attested-to lost time at a rate of $20 for up to 3 hours and (ii) other extraordinary expenses not to exceed $5,000 per Settlement Class Member. Settlement Class Members are also eligible to enroll in IDX Identity Protection Services for two (2) years by affirmatively requesting credit monitoring on the Claim Form. S.A. ¶ 2.3. Given the relief available, Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting the Settlement Class are as attacks on the substantive claims Plaintiff has alleged. *See* (Doc. 15, 16). Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in his awareness of the various defenses available to Defendants, as well as the risks inherent to continued litigation. Defendants have consistently denied the allegations and made clear that they would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. Checks for approved claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. S.A. ¶ IV.8.2.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on Class relief. Yanchunis Decl. ¶ 19. Proposed Class Counsel will request the amount of $300,000 for attorneys' fees, costs, and expenses, S.A. ¶ IV.7.2, and move the Court for a service award payment not to exceed $2,500 per Class Representative to be paid if and only if the *en banc* Eleventh Circuit vacates the

decision in *Johnson v. MPAS Solutions, LLC*. S.A. ¶ IV.7.3.  Cotiviti shall pay the Court-approved amount of attorneys' fees, costs, expenses, and service award to Plaintiff (if applicable) to an account established by Proposed Class Counsel within thirty (30) days after the entry of an order of Final Approval, regardless of any appeal that may be filed or taken by any Class Member or third party.  S.A. ¶ IV.7.4. Class Counsel will repay to Cotiviti the amount of the award of attorneys' fees and costs in the event that the final approval order and final judgment are not upheld on appeal and, if only a portion of fees or costs (or both) is upheld, Class Counsel will repay to Cotiviti the amount necessary to ensure the amount of attorneys' fees or costs (or both) comply with any court order. *Id.*

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed.  Subsection (C) of Rule 23(e)(2) is therefore met.

### c. The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form and/or IDX Identity Protection Services for two (2) years from the Effective Date. Yanchunis Decl. ¶ 27.

### 2. The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for review of a proposed class action settlement is a well-established two-step process.  ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS,

§11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."[17] "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.[18]

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

### D. The Proposed Class Notice Satisfies Rule 23.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal,

---

[17] *Id.* (quoting MANUAL FOR COMPLEX LITIG., §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).
[18] *See* MANUAL FOR COMPLEX LITIG. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The Notice program here satisfies all of these criteria and is designed to provide the best notice practicable. The Notice is reasonably calculated to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Proposed Class Counsel's request for attorney's fees, costs, and expenses, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). The Notice program is comprised of: (1) direct Notice sent by mail or email; and (2) Notice posted to the settlement website. S.A. ¶¶ IV.1.18, IV.3.1(f), IV.3.2. This approach will satisfy due process. Wickersham Decl. ¶ 12.

The form of the Preliminarily Approval Order, Exhibit D, has been drafted and approved by counsel for Plaintiff and counsel for Defendants. The proposed claim form, S.A. Exhibit A, likewise satisfies all of the above criteria. Finally, Defendants

24

will cause the Claims Administrator to provide the notification required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the relevant state and federal governmental officials. S.A. ¶ IV.3.4.

Therefore, the Notice and Notice Program satisfy all applicable requirements of the law, including Rule 23 and Due Process. The Court should therefore approve the Notice, Notice Program, and the form and content of the claim form and Notice.

### E. The Court Should Schedule a Final Approval Hearing.

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under Rule 23(e); and whether to approve Proposed Class Counsel's request for the Fee Award and Costs. Plaintiff requests that the Court schedule the Final Approval Hearing at a date convenient for the Court, at least 90 days after Defendants notify the appropriate government officials pursuant to CAFA. Class Counsel will file the motion for Final Approval no later than 21 days prior to the hearing.

### IV.    CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the Settlement Class; (3) appointing Steven K. Farmer as Settlement Class representative; (4) appointing John A. Yanchunis and Ryan D. Maxey as Class Counsel; (5) approving the proposed Notice Program and authorizing its dissemination; (6) appointing RG/2 Claims Administration LLC as the Settlement

Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process. A proposed Preliminary Approval Order is attached as **Exhibit D**.

Dated: May 23, 2022                    Respectfully submitted,

                                       */s/ John A. Yanchunis*
                                       JOHN A. YANCHUNIS
                                       jyanchunis@ForThePeople.com
                                       RYAN D. MAXEY
                                       rmaxey@ForThePeople.com
                                       **MORGAN & MORGAN**
                                       **COMPLEX LITIGATION GROUP**
                                       201 N. Franklin Street, 7th Floor
                                       Tampa, Florida 33602
                                       Telephone: (813) 223-5505
                                       Facsimile: (813) 223-5402

                                       ***Attorneys for Plaintiff and the Proposed***
                                       ***Class***

## Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendants regarding the relief requested in this motion and Defendants do not object to the relief sought herein but only in connection with the proposed settlement of this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of

the foregoing document will be served upon counsel via transmission of Notices of

Electronic Filing generated by CM/ECF.

*/s/ John A. Yanchunis*