## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STEVEN K. FARMER, individually and on
behalf of all others similarly situated,

                 Plaintiff,

v.

HUMANA INC., a Delaware corporation,
and COTIVITI, INC., a Delaware
corporation,

                 Defendants.

Case No.: 8:21-cv-01478-MSS-SPF

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND OTHER RELIEF

Plaintiff, Steven K. Farmer ("Plaintiff") respectfully moves for final approval of the Settlement,[1] including disbursement of the settlement funds, certification of the settlement class, and an award of attorneys' fees, costs and expenses.

## I.  INTRODUCTION

Defendant Cotiviti, Inc. ("Cotiviti") helps Defendant Humana, Inc. ("Humana") request medical records needed to verify data reported to the Centers for Medicare and Medicaid Services.  S.A. ¶ I.1.  Cotiviti in turn uses a subcontractor, Visionary RCM Infotech (India) Pvt Ltd ("Visionary"), to review the

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is attached to Plaintiff's Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement as Exhibit A (Doc. 39).

collected medical records.  *Id.*

On or about March 1, 2021, Humana disclosed that between October 12, 2020 and December 16, 2020, an employee of Visionary gained access to personally identifiable information ("PII") and protected health information ("PHI") of Humana members and shared that information with others in connection with a personal coding business (the "Data Incident").  *Id.* ¶¶ I.2-3.

On May 6, 2021, Plaintiff commenced the instant litigation by filing a complaint in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, relating to the Data Incident.  *Id.* ¶ I.3. The complaint sought class action status and remedies for Plaintiff and other Humana members impacted by the Data Incident.  *Id.* ¶¶ I.3-4.  On or about June 17, 2021, Defendants removed the matter to this Court.  *Id.*

Thereafter, the parties engaged in motion practice, including Defendants' Motions to Dismiss (Docs. 15, 16).  On January 25, 2022, the Court entered an Order granting in part and denying in part the Motions to Dismiss (Doc. 32).

On March 10, 2022, the parties engaged in mediation with mediator Harry Schafer, an experienced mediator.  In advance of the mediation, the parties submitted mediation briefs advancing their respective positions on the merits of the claims and class certification. After extensive arm's length settlement negotiations, the parties were able to reach an agreement, which, if approved by the Court, would resolve the

claims of Plaintiff and the other Humana members impacted by the Data Incident.

Pursuant to the terms that were negotiated between them, the parties now wish to fully and finally resolve their dispute on a class-wide basis. Those terms are memorialized in the Settlement Agreement, which provides for the resolution of all claims asserted, or that could have been asserted, against Defendants relating to the Data Incident, by and on behalf of Plaintiff and Settlement Class Members.

The relief negotiated by counsel extremely experienced in litigating privacy litigation and security incidents of the type at issue in the present litigation, and provided by the Settlement, is designed to address the injuries and repercussions typically experienced by individuals whose personally identifiable information has been compromised in a security incident of the type at issue here. Specifically, the Settlement Agreement provides an aggregate cap of $500,000.00, to be paid by Cotiviti, for the following general categories of relief; (i) the reimbursement of ordinary expenses, (ii) the reimbursement of other extraordinary expenses, and (iii) credit monitoring and identity protection. The Settlement Agreement also requires Cotiviti to separately pay for (i) all costs for notice to the Settlement Class as required under S.A. ¶¶ IV.3.1 and IV.3.2; (ii) Costs of Claims Administration under S.A. ¶¶ IV.8.1, IV.8.2, and IV.8.3; and (iii) the costs of Dispute Resolution described in S.A. ¶ IV.2.6. *See* S.A. ¶ IV.2.7. These services will be handled by a neutral experienced in disseminating notice to class members and administrating claims of

3

the type which may be filed by Settlement Class Members.  Cotiviti will also separately pay the attorney's fees, costs, and expenses of Class Counsel and a service award to Class Representative (if permitted), as set forth in S.A. ¶ IV.7, subject to Court approval.  Class Counsel has agreed to request, and Cotiviti has agreed to pay, subject to Court approval, the amount of $300,000.00 to Class Counsel for attorney's fees, costs, and expenses.  S.A. ¶ IV.7.2.

On May 23, 2022, Plaintiff filed an unopposed motion for an order directing class notice and granting preliminary approval of class action settlement, conditionally certifying a settlement class; appointing Plaintiff as the Class Representative, Plaintiff's counsel as Class Counsel, and RG/2 as the notice and claims administrator; and directing notice in accordance with the notice plan described in the motion.  (Doc. 39).  On June 23, 2022, the Court entered an order granting that motion, (Doc. 40), and notice was disseminated to the Settlement Class. On November 2, 2022, Plaintiff filed his motion for attorney's fees and litigation costs (the "Fee Motion").  (Doc. 42).  On December 28, 2023, the Magistrate Judge entered a Report and Recommendation recommending that the Fee Motion be granted in part and denied in part.  (Doc. 43).  On January 11, 2023, Plaintiff filed an objection to the Report and Recommendation.  (Doc. 44).

## II. BACKGROUND

### A. Information About the Settlement

To explore and potentially negotiate a class-wide settlement before a neutral, the parties agreed on and retained Harry Schafer, a highly experienced mediator. Declaration of John A. Yanchunis (Doc. 39-2) ("Yanchunis Decl."), ¶ 16. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On March 10, 2020, the parties had a full-day mediation session with Mr. Schaffer. *Id.* The negotiations were hard-fought throughout, and the process was conducted at arm's length and non-collusive. *Id.* After extensive arm's length settlement negotiations conducted through Mr. Schaffer, the parties reached an agreement on the essential terms of settlement. *Id.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 19.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including other data breach cases in this District and before this Court, and the information provided by Defendants, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

**B. The Terms of the Settlement Agreement**

**1. The Settlement Class**

The proposed Settlement Class sought to be certified for purposes of

settlement is defined as follows:

> "All individuals residing in the United States whose
> personal information was or may have been compromised
> in the data breach that is the subject of the Notice of
> Privacy Incident that Humana sent to Plaintiff and others
> in substantially the same form on or around March 1,
> 2021." The Settlement Class specifically excludes: (i)
> Humana Inc. and Cotiviti, Inc. and its officers and
> directors; (ii) all Settlement Class Members who timely
> and validly request exclusion from the Settlement Class;
> (iii) the Judge assigned to evaluate the fairness of this
> settlement; (iv) the attorneys representing the Parties in the
> Litigation; and (v) any other Person found by a court of
> competent jurisdiction to be guilty under criminal law of
> initiating, causing, aiding or abetting the criminal activity
> involved in the Data Incident or who pleads nolo
> contendere to any such charge.

S.A. ¶ IV.1.26.

## 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the

following benefits:

- Reimbursement of ordinary expenses, not to exceed $250 per
  Settlement Class Member, including attested-to lost time spent to
  address the repercussions of the Data Incident at a rate of $20 per hour
  for up to 3 hours;

- Reimbursement of other extraordinary expenses not covered in the
  ordinary expense category incurred as a result of the Data Incident, not
  to exceed $5,000 per Settlement Class Member; and

- In order to provide protection from the potential consequences of the
  Data Incident, Settlement Class Members may enroll in two (2) years
  of IDX Identity Protection Services, regardless of whether the
  Settlement Class Member submits a claim for reimbursement of

ordinary or extraordinary expenses.

S.A. ¶¶ IV.2.1, IV.2.2, IV.2.3.

The Identity Protection Services to be provided by IDX under the Settlement are robust and important. The retail cost of buying the same Identity Protection Services would be $238.80 per person for 2 years of service. *See* Yanchunis Decl. ¶ 27.

### 3. Attorneys' Fees, Costs, and Expenses

Class Counsel has agreed to request, and Cotiviti has agreed to pay, subject to Court approval, the amount of $300,000 for attorneys' fees, costs, and expenses. S.A. ¶ IV.7.2. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Yanchunis Decl. ¶ 19.

### 4. Release of Claims

Under the Settlement, each Settlement Class Member will release:

any and all claims and causes of action that were or could have been brought in the Litigation based on, relating to, concerning or arising out of the Data Incident and alleged theft or misuse of Humana members' PII or PHI, or the allegations, facts, or circumstances related to the Data Incident as described in the Litigation … by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident and alleged theft or misuse of Humana members' PII or PHI or the allegations, facts, or circumstances related to the Data Incident as described in the Litigation.

S.A. ¶¶ IV.1.21, IV.6.1.

## III.    CAFA NOTICE, CLASS NOTICE, AND CLAIMS

On June 23, 2022, the court appointed RG/2 Claims Administration LLC to serve as the settlement administrator and effectuate notice of the settlement to the class. (Doc. 40). Pursuant to 28 U.S. Code § 1715, RG/2 caused CAFA Notice regarding the settlement to be sent to the Attorneys General of New Jersey and Connecticut, as well as the Attorney General of the United States on June 2, 2022. RG/2 Decl. at 2, attached **Exhibit A**.

On June 1, 2022, RG/2 received the Settlement Class List from the Defendants which included class members' names and mailing or email addresses. *Id.* at 3. Following the de-duplication process, RG/2 concluded there were a total of 64,653 individual class members. *Id*.

On July 18, 2022, RG/2 caused the notice to be emailed to 30,610 Class Members. *Id*. Of the 30,610 Notices emailed, 2,960 were returned as undeliverable, 320 bounced, and 376 had bad or incomplete email addresses. *Id.* The remaining 26,954 emails were successfully delivered. *Id.*

On July 18, 2022, RG/2 caused the notice to be mailed to 34,043 Class Members via the U.S. Postal Service (USPS). *Id.* at 3-4. Of the 34,043 Notices mailed, 2,100 were returned by USPS as undeliverable as of January 5, 2023. *Id.* at 4. Of the 2,100 returned Notices, 299 were returned with a forwarding address, to which a new Notice was mailed, and 1,060 new Notices were mailed to updated

addresses found through standard skip-tracing procedures. *Id.*

The deadline for Class Members to submit claim forms was November 15, 2022. *Id*. As of January 5, 2023, RG/2 had received a total of 394 claim form submissions. *Id.*

RG/2 received only 1 request to be excluded from the Settlement. *Id*. No class members objected to the Settlement. *Id*.

## IV.   ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class

action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Judges in this district have noted—many times—that "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[2]

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  While the Court conditionally certified the class in its prior order, this case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1.  The Proposed Settlement Class Meets the Requirements of Rule 23(a).

#### a.  Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v.*

---

[2] *Iverson v. Advanced Disposal Servs., Inc.*, 2021 WL 4943585, at *3 (M.D. Fla. Aug. 6, 2021) (Toomey, M.J.), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021) (Davis, J.); *Flores v. Acorn Stairlifts, Inc.*, 2020 WL 9549903, at *1 (M.D. Fla. Jan. 31, 2020) (same) (Smith, M.J.) *report and recommendation adopted*, Case No. 6:19-cv-00844, ECF No. 49 (M.D. Fla. March 24, 2020) (Berger, J.).

*Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Humana sent notices of the Data Incident to 64,653 Humana members. S.A. ¶ I.2. Thus, numerosity is easily satisfied.

### b. Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only

that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[3] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff alleged, among others, the following common questions:

a. Whether and to what extent Defendants had a duty to protect the PII and PHI of Plaintiff and Class Members;

b. Whether Defendants had duties not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendants had duties not to use the PII and PHI of Plaintiff and Class Members for non-business purposes;

d. Whether Defendants failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

e. Whether and when Defendants actually learned of the Data Breach;

f. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g. Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendants engaged in unfair, unlawful, or deceptive practices by

---

[3] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

failing to safeguard the PII and PHI of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

m. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

(Compl. ¶ 69). Such issues, focusing on Defendant's conduct, satisfy commonality.[4]

### c. Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[5] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

---

[4] *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

[5] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Incident. They are also based on the same legal theory, *i.e.*, that Defendants had legal duties to protect Plaintiff's and Settlement Class Members' PII and PHI. Because there is a "sufficient nexus" between Plaintiff's and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d.  Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. He authorized Humana to collect and retain his PII and PHI and alleges it was compromised by the Data Incident, as the PII and PHI of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Yanchunis Decl., ¶¶ 3–12, and its Composite Exh. 1. Because Plaintiff and his counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2. The Predominance and Superiority Requirements of Are Met.

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[6] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[7]

Common issues readily predominate here because the central liability question in this case—whether Defendants failed to safeguard Plaintiff's PII and PHI, like that of every other Settlement Class Member—can be established through

---

[6] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[7] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

generalized evidence.[8] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendants had duties to exercise reasonable care in safeguarding, securing, and protecting their PII and PHI and whether Defendants breached those duties. The many common questions that arise from Defendants' conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[9] Because the claims are being certified for settlement purposes, there are no manageability issues.[10]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the

---

[8] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

[9] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[10] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

class action is the superior method for a particular case focuses on 'increased efficiency.'"[11] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[12] Additionally, the Settlement will give the parties the benefit of finality.

---

[11] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

[12] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

**B. The Settlement Is Fair, Reasonable, and Adequate.**

Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[13]

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[14] Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

**1. The Settlement Satisfies Amended Rule 23(e)**

Under Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

---

[13] *See Taylor v. Citizens Telecom Servs. Co., LLC*, ----F. Supp. 3d ---- 2022 WL 456448, at *2 (M.D. Fla. Feb. 8, 2022) (Honeywell, J.) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[14] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Harry Schafer. Yanchunis Decl. ¶ 16.[15] Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

### b. Adequacy of Relief

---

[15] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of his claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims would still need to succeed against the pending motion to dismiss (Doc. 89), and on a motion for class certification, and likely survive an appeal thereof.

Pursuant to the Settlement, Cotiviti will pay an aggregate cap of $500,000.00 for (i) the reimbursement of ordinary expenses, (ii) the reimbursement of other extraordinary expenses, and (iii) credit monitoring and identity protection. Each Settlement Class Member who submits a timely and valid claim form may receive reimbursement of (i) ordinary expenses not to exceed $250 per Settlement Class Member, including attested-to lost time at a rate of $20 for up to 3 hours and (ii) other extraordinary expenses not to exceed $5,000 per Settlement Class Member. Settlement Class Members are also eligible to enroll in IDX Identity Protection Services for two (2) years by affirmatively requesting credit monitoring on the Claim Form.  S.A. ¶ 2.3.  Given the relief available, Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting the Settlement Class are as attacks on the substantive claims Plaintiff has alleged. *See* (Doc. 15, 16). Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in his awareness of the

various defenses available to Defendants, as well as the risks inherent to continued litigation. Defendants have consistently denied the allegations and made clear that they would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. Checks for approved claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. S.A. ¶ IV.8.2.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on Class relief. Yanchunis Decl. ¶ 19. Class Counsel has requested the amount of $300,000 for attorney's fees, costs, and expenses. Cotiviti shall pay the Court-approved amount of attorneys' fees, costs, expenses to an account established by Class Counsel within thirty (30) days after the entry of an order of Final Approval, regardless of any appeal that may be filed or taken by any Class Member or third party. S.A. ¶ IV.7.4. Class Counsel will repay to Cotiviti the amount of the award of attorneys' fees and costs in the event that the final approval order and final judgment are not upheld on appeal and, if only a portion of fees or costs (or both) is upheld, Class Counsel will repay to Cotiviti the amount necessary to ensure the amount of attorneys' fees or costs (or both) comply with any court order. *Id.*

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed.  Subsection (C) of Rule 23(e)(2) is therefore met.

### c.  The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form and/or IDX Identity Protection Services for two (2) years from the Effective Date. Yanchunis Decl. ¶ 27.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order granting Plaintiff's motion for final approval of the Settlement, including disbursement of the settlement funds, final certification of the settlement class, and an award of attorneys' fees, costs, and expenses.

Dated: January 17, 2023              Respectfully submitted,

*/s/ John A. Yanchunis*
JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN D. MAXEY
rmaxey@ForThePeople.com
**MORGAN & MORGAN**

**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

*Attorneys for Plaintiff and the Class*

<u>**Local Rule 3.01(g) Certification**</u>

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendants regarding the relief requested in this motion and Defendants do not object to the relief sought herein but only in connection with the proposed settlement of this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *John A. Yanchunis*